Our next case is Smart Mobile Technologies v. Apple and Samsung 2024-1289. Mr. Shaw, we're ready when you are. Good morning, Your Honors. Greer Shaw on behalf of Smart Mobile Technologies LLC, which is the patent owner in the IPR proceeding that is underlying this case. Let me start by asking the panel whether there are any specific questions you'd like me to address. Well, why don't you proceed, and if we have any as we progress, we won't be bashful. Very good, Your Honor. Thank you. So, Your Honors, I'm sure you're familiar with the briefing. The claim at issue here is Claim 2 of what's referred to as the 168 patent and the briefs. The Claim 2 generally is directed to a remote server, which is a claim term, remote server. That is, remote relative to one or more wireless devices having various features and functionalities recited in Claim 2. The claim recites, among other things, that the remote server stores, quote, profiles of user-specific information, close quote. So, the two limitations that are at issue here are remote server and profiles of user-specific information. Now, there are two issues here on appeal. First, whether the board violated the APA when it determined that the prior art teaches a remote server, and secondly, whether the board violated the APA when it determined that the prior art teaches profiles of user-specific information. Let me start with remote server. So, Apple's theory of unpatentability with respect to remote servers articulated in their petition and consistently throughout their briefing was that Claim 2 is obvious over a combination of two references, Baker and Satan. You don't mean is obvious, you mean was obvious or would have been obvious at the time of your mention. Thank you, Your Honor. Yes, would have been obvious over the combination of Baker and Satan. Now, generally speaking, Baker taught a server, which communicated with other devices on a local area network, including a wireless smartphone, what Baker referred to as a smartphone. Now, Satan taught a different type of wireless device. So, Apple's theory posited a system comprising Baker's server and Satan's wireless device connected to one another on a local network. And this is at appendix 231, and you can also refer to appendix 229 to 230, which is where Apple articulates this theory. In fact, not only articulates it, but presents it graphically with an annotated version of figure 3 from Baker with some additions added in red color, which shows Satan's device together with Baker's server together on a local network. I thought the combination was not so much using Satan's phone in Baker's network, but it was using Baker's lookup service as a server that would be installed on the carrier side of Satan's system. Well, Your Honor, there was some reference to a carrier in the petition. That ended up not being the theory that the PTAB adopted. There's a footnote where they acknowledge that this was an additional, perhaps an additional theory, but the board did not get to it. The board did not base its decision on any server at the carrier side. Now, this raises a claim construction issue, because Apple argued that Baker's server was removed from Satan's… There's been an APA violation because you did not have the opportunity to address one of the prior to Baker? That's right, Your Honor. Really, that's the crux of your argument. The APA violation, in our view, is that the patent office, the board in this case, came up with its own theory, its own argument for why this limitation was not… And you didn't get a chance to address it. Precisely right. And what I mean by that is… What about your citations to Baker at A36 through 38? It seems to me there's at least four times there that you addressed Baker. I'm sorry, Baker, column A36 to 40? Right. Right, so that was the teaching from Baker that the board relied upon for the board's conclusion that Baker teaches a server that can be remote to clients outside the local network, for example, on the Internet. That was not Apple's theory. In fact, that's exactly the problem here. The board came up with that theory on its own. If you look at the petition and the additional briefing that Apple filed and the record at trial, Apple never cited those teachings from Baker. Apple never cited column A lines 36 through 40 in support of their theory that Baker, combined with Satan, taught a remote server. There's an unusual circumstance here, because the board ultimately relied on lookup service 136 from Baker, and that's the precise element that was cited and relied upon in the petition. And so there was a debate through the entire IPR proceeding about whether lookup service 136 from Baker can meet this limitation of a remote server, and the board ultimately found that it did. So I don't know of another case where there was an APA violation where the board ultimately relied on the very structural element from the very prior art reference that was presented during the original petition. The issue here, Your Honor, first of all, there were two issues with respect to Baker. One was whether the lookup service was even a server, and that's something we briefed, the Smart Mobile briefed earlier in the proceeding, and the board disagreed and considered Baker's lookup service to be a server. I guess, do you understand the concern that's embedded in my question-slash-observation? I understand Your Honor's concern, but our concern is that the board developed its own argument. Apple never pointed to Baker's teachings about clients outside the local network on the internet as supporting Apple's argument that Baker taught a remote server. Apple never argued that. That was something the board came up with on its own for the first time in the final written decision. It did not come up in the initial institution decision. It did not come up at trial. We saw it for the first time in the FWB. Suddenly, this is the first time the board or anyone is pointing to Baker's teachings at column 8, line 36 to 40, and saying that teaches a remote server, remote relative to clients on the internet. Apple never made that argument. I didn't see anywhere in your briefing, at least to us, why that's a wrong way to look at lookup service 136. The issue, Your Honor, respectfully, is not whether that's a wrong way to look at it. The issue is, is it permissible for the board to come up with its own arguments that neither party ever prevented? And you look at, for example, the Magnum Oil Tools case and others, and they're clear that it is reversible error for the board to adopt arguments that a petitioner never made, particularly when, as here, the opposing party had no opportunity to respond. So whether Baker actually teaches a remote server really is not the issue. The issue is procedural. Did the board make an error? Did the board violate the Administrative Procedure Act by coming up with its own argument that Apple never made and finding our claim to be unpatentable based on that argument that surfaced for the first time in the final written decision? That's the error. Now, as I said, remote was a disputed term. Apple's theory in the petition and articulated in its briefing was that remote just means separate. The theory was Baker's server and Satan's device together on a local network. One is remote relative to the other because they're just separate devices. That was the theory, an implied construction of remote just being separate, physically separate. Smart Mobile's response, as articulated in our briefing consistently, was that remote means at a remote location. And there's copious argumentation in the record. I understand claim construction is not one of the issues before your honors, but what I'm saying is that parties did dispute remote. They offered competing facts and arguments and expert declarations about what remote means. And in the final written decision, the board recognized that parties claimed construction dispute. This is at Appendix 9 as well as Appendix 24 to 25. The board expressly recognized that this was a hotly disputed issue. However, the board did not resolve that dispute. There's no claim construction in the FWD. There was no claim construction for Smart Mobile to appeal. There's no claim construction in the FWD on which the court can affirm the board's holding here. So rather than construing the disputed term remote, the board improvised its own unpatentability theory, presuming to which Claim 2 is unpatentable under Smart Mobile's proposed construction. And what the board said was Baker teaches the claimed remote server because it teaches a server that can serve quote, clients outside the local network, close quote, such as on the internet. And as your Honor pointed out for that finding, the board pointed specifically, in fact, only to the entire basis for that conclusion was Baker, Column 8, Line 36 to 40, which disclosures Apple never relied upon in their petition. Now, I don't want to leave the court with the misimpression that that disclosure was never mentioned in the petition. It was in the background section where Apple discussed this with prior art. They discussed Baker and St. Tim and some other references. And they do highlight, not highlight, but among other references, they point out these disclosures from Baker. But that's in the background section. When it comes to the specific arguments directed to this claim limitation, Apple was silent. Apple did not mention Baker, Column 8, Line 36 to 38. You raised it in your patent owner response and your patent owner server reply, right? Well, first of all, we were responding to the arguments that Apple made. We did not raise this to point out that Baker teaches a remote server. In fact, the opposite. Our argument was addressing the fact that Apple's theory was presenting Baker's server and St. Tim's device together on a local network. And Baker's quite clear that Figure 3, which is what Apple relied upon for its petition, displays devices together on a local network. And we referenced Line 36 to 38 from Baker in connection with our argument. To reinforce that Apple's theory was presenting these devices together on a local network, which was not remote, right? Because we were saying remote was... You're into your rebuttal time. You can continue or save it as you wish. Or a combination thereof. Yes. I do want to spend a few minutes on the profiles question. The issue there was user. Does user mean a human person, which was Smart Mobile's argument? Or does user mean... Can it include software running on a device? And for this, Apple pointed to Baker, which talks about storing information about a requester module, right? It's some kind of a software component from the server, and the server keeps track of the requester module, right? The module that requests that software. The requester module is part of the phone, right? It's software. Baker expressly defines module as an executable software component. Yeah, in a phone. Or a device, right? Some kind of a device, a client device. Like the wireless device that's communicating with the server. A client device that's making a request, right. So it's the client device that's making a request for some kind of service.  And then the server sees that and then signs up. The server keeps track of the piece of software, the requester module, in the words of Baker, that requests that software. Does it matter to the obvious analysis whether your construction is user-run? With respect to profiles of user-specific information, Your Honor, yes it does. Because Baker does not teach storing information about human users. And under our construction, Smart Mobile's construction, user, the claim term user, means a human person. Not a device, not software on a device. Baker does not teach storing anything about human users. The board decision points to Sainton for teaching that, right? It does not. Maybe at the bottom at 834 or something like this? Well, Sainton teaches storing, according to the petition, storing some human user-specific information. Not at the server, but in the device itself. And there was some argumentation about that. The board ended up not relying upon that particular argument. I think we have a footnote in our brief addressing that point. I see that I'm running out of time. I'll reserve the rest for rebuttal unless you have any additional questions. All right, Ms. McComas. Good morning. May it please the Court? Debbie McComas on behalf of Apple. As we know, there are two issues here. One is with respect to remote server. The other is with respect to profile user. Each of those, very quickly, the Court seemed to understand the issues in this case in the party's briefing. But Judge Chen, you got it right. It's almost like ships passing in the night as to what was argued below and what the issues are here. But the combination that Apple argued was always Sainton's teaching of a mobile device that sent messages over the air to a carrier. And the use of Baker was to show the remote server could be implemented in the combination with Sainton. So it's the reverse of what my opponent understood in the briefing it to be. And that helps explain a little bit the disconnect in the briefing, I think, as to what the issues are here. And also the disconnect or the assertion of an APA violation here with respect to the Board's findings, which are very specific. And there's one other thing my opponent noted that I think is helpful here. They conceded that claim construction is not before the Court. And admittedly, that was a struggle in the briefing because you wanted to just say, no, no, claim construction was right. But there was absolutely no engagement in the opening brief on claim construction. And the problem for my opponent is he has to show harmless error for the Court to even spend its time analyzing the APA violation. And there's no harmless error absent of showing that the claim construction… We mean harmful error. Harmful error, correct. Thank you for the clarification. I'm also talking backwards. I lost you. Exactly. If the Court has no further questions on remote server, I'll address profile user quickly. And with respect to the profile of user-specific information, it's important to note the claim term is profile of user-specific information, not user. And that's important. And it's also important to note that what the Board found here was a very fact-intensive analysis with respect to the teachings, as Your Honor pointed out, Judge Chen, that Saint-On, on its own, taught the type of user that Smart Mobile advocates for. What Baker taught us in the combination of those, along with the extensive testimony of what one skilled in the art would understand, was that a user would necessarily… that the profiles of user-specific information would be synonymous with what the combination of Baker and Saint-On taught. This was entirely a fact-specific finding by the Board that has not been challenged for substantial evidence on appeal. If the Court has no further questions, I'll yield my time. No one loses points for not using up all their time. Thank you, Your Honor. Mr. Shaw. Thank you, Your Honors. Just briefly to respond to two points. First, with respect to removed server, the Board did not rely upon any server in Saint-On. That's quite clear from the final written decision. The Board, and I'm just reading, this is Appendix 26. This is the Board saying, Baker teaches the claim of removed servers because it teaches the server, lookup service 136, that can serve clients outside the local network, thus meeting Smart Mobile's interpretation of removed server, that excludes a local network server on the app, network server for the outside local network clients. For that finding, the Board relied upon Baker 8, lines 36 to 40. The Board did not rely upon Saint-On or anything at the carrier side in Saint-On at all. And it's not enough for Apple to fish around in the record and say, well, Saint-On taught some kind of a carrier-side server, when that's not the theory the Board relied upon. The Court here is limited to reviewing the theories that the Board actually relied upon, did not rely upon Saint-On. With respect to the user, similarly, the Board found, and this is in Appendix 36, we agree that one of ordinary skill in the art would have recognized that the server registering the requester module as a user of the service object means that the server is maintaining a profile for the user of the service object, parentheses, the requester module, close parentheses, close quote. Again, the Board relied upon Baker exclusively. Clearly, the Board adopted Apple's construction that the word server can include software. That was directly contrary to Smart Mobile's proposed construction. The Board never resolved that claim construction dispute. Counsel, as you can see, your time has expired. Do you have a final thought? That's it, Your Honor. Thank you very much. All right. Thank you. Both counsel, the case is submitted.